UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAAFAT ELSISY,

           Plaintiff,                       Case No. 2:19-cv-13346
                                           District Judge Gershwin A. Drain
v.                                       Magistrate Judge Anthony P. Patti

CITY OF KEEGO HARBOR and
DAVID MCDONALD,

           Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 25) AND DENY PLAINTIFF'S MOTION FOR SANCTIONS (ECF No. 39)

**I.**    **RECOMMENDATION**:  The Court should **GRANT** Defendants' motion to dismiss (ECF No. 25), which would result in the dismissal of Plaintiff's entire amended complaint, and **DENY** Plaintiff's motion for sanctions (ECF No. 39).

**II.**    **REPORT**

    **A.**    **Background**

        **1.**    **Factual Background**

    Plaintiff Raafat Elsisy, proceeding *in pro per*, filed the instant action against Defendants the City of Keego Harbor (the City) and Code Enforcement Officer David McDonald (McDonald) on November 13, 2019 (ECF Nos. 1, 2, 6), and a first amended complaint thereafter, claiming violations of his Fourth and

Fourteenth Amendment rights related to Defendants' issuance of ordinance citations (ECF No. 17).[1]  The underlying facts, as alleged and taken as true for purposes of this motion, are as follows.

Plaintiff has parked in the driveway of his Keego Harbor home a Mercedes, a Hummer, a van, and a boat.  (ECF No. 17, PageID.70-72, ¶¶ 23, 32.)  In March of 2019, Plaintiff received a notice signed by McDonald asking that he correct two ordinance violations regarding the hazardous steps leading to his front door and the non-operational Hummer parked in his driveway by April 4, 2019.  (ECF No. 17, PageID.66, 70, ¶¶ 4, 24; *see also* Exhibit 2 to Defendants' Motion to Dismiss, ECF No. 25-3.)  When Plaintiff called McDonald in April to discuss the notice, McDonald asked if the Hummer was running, and directed Plaintiff to repair the middle step leading to his front door.  (ECF No. 17, PageID.70, ¶ 25.)  During that conversation, McDonald noticed Plaintiff's accent, which is "noticeable even to kids," and Plaintiff "laughed" and explained where he was from originally.  (ECF No. 17, PageID.70-71, ¶ 28.)   McDonald gave plaintiff an extension to effect the repairs by the end of April "due to bad weather."  (ECF No. 17, PageID.70, ¶ 25.)

---

[1] Plaintiff states in his amended complaint that the action was "removed" to federal court (ECF No. 17, PageID.66, ¶ 1), but Defendants clarify in their motion to dismiss that: "On the morning of November 13, 2019, Plaintiff filed a Notice of Removal to federal court.  Due to this filing, the City Attorney, Thomas Ryan, adjourned the 48th District Court matter for 30 days and ultimately dismissed it without prejudice pending resolution of the within federal case."  (ECF No. 25, PageID.222).

In a second notice dated May 6, 2019, Plaintiff was given until May 15, 2019, to repair his front steps and to repair or remove all non-operational vehicles in the driveway.  (ECF No. 17, PageID.71, ¶ 29; *see also* Exhibit 3 to Defendants' Motion to Dismiss, ECF No. 25-4.)  However, when McDonald called again that month to inquire about the registration status of the vehicles, Plaintiff covered the van and Hummer license plates with a tarp so that they could not be seen.  (ECF No. 17, PageID.71-72, ¶¶ 31-32.)

In September 2019, Plaintiff confronted McDonald when he noticed him looking into his house and traversing the "curtilage" area without permission, in response to which McDonald claimed to be investigating a neighbor's complaint regarding the van.  (ECF No. 17, PageID.72, ¶¶ 33-34.)  Ultimately, Defendants cited Plaintiff for violations of sections 302.1, 304.1, and 302.8 of the International Property Maintenance Code (IPMC) on October 2, 2019, stating, "property presents blight appearance," "front steps require repair," and "vehicle not operational or properly licensed."  (ECF No. 17, PageID.73, ¶ 36; *see also* Exhibit 6 to Defendants' Motion to Dismiss, ECF No. 25-7.)

When Plaintiff called for clarity regarding the citations, McDonald mocked Plaintiff's accent and indicated that he knew all of the judges in the 48th district court, where Plaintiff's ordinance citation hearing would be held.  (ECF No. 17, PageID.73-74, ¶¶ 38-40.)  That hearing was originally scheduled for October 23,

2019, but adjourned to November 13, 2019, in light of Plaintiff's representations on the morning of the hearing that he came down with food poisoning. (ECF No. 17, PageID.77-78, ¶¶ 57-60.) Ultimately, however, the City dismissed Plaintiff's case without prejudice, pending resolution of the instant action. (ECF No. 25, PageID.222.)

> On the basis of the above, Plaintiff asserts:
>
> Defend[ant] Mr. David McDonald, Keego Harbor municipal employee as the Code enforcement officer, oppress[ed], caused and intentionally subjected [him] to deprivation of [his] constitutional rights. Keego Harbor municipal policy/custom was the moving force behind the deprivation of my constitutional rights, the actual cause of [his] physicals/emotional damages, as a result of the actions and inactions of the defendants, all of whom at all times were acting under color of law within the course and scope of their employment, in violation of [his] civil rights under 42 u.s.c. § 1983.

(ECF No. 17, PageID.68, ¶ 12.) Specifically, Plaintiff claims that: (1) McDonald, in order to ticket Plaintiff for unlicensed vehicles, must have entered the "curtilage" of his home without permission and removed the tarp covering the van and Hummer license plates in violation of his Fourth Amendment right to be free from an unlawful search (ECF No. 17, PageID.66-67, 91-94, 106-108, ¶¶ 6-7, 105-112, 177-182); (2) he received three vague ordinance citations, one as a result of IPMC 302.8, which is itself unconstitutionally vague, in violation of his Fourteenth Amendment due process rights (ECF No. 17, PageID.67, 93-94, 98-101, ¶¶ 8, 11, 112, 132-149): (3) Defendants violated his Fourteenth Amendment equal

4

protection rights by issuing him, but not his neighbors with property in worse in condition, ordinance citations (ECF No. 17, PageID.67, 95-98, 103-105, ¶¶ 9, 119-131, 165-170); (4) he was denied access to the district court in violation of his Fourteenth Amendment due process rights (ECF No. 17, PageID.67, 94-95, 105-106, ¶¶ 10, 113-118, 171-176); and (5) all of the constitutional violations were the result of a money-making scheme by the City to target residents for ordinance violations (ECF No. 17, PageID.83-91, ¶¶ 77-104).

Plaintiff has since filed several motions with the Court, including two motions for Rule 11 sanctions (ECF Nos. 29, 30), an additional motion for sanctions (ECF No. 39), a motion to set aside the Court's orders following the filing of the discovery plan (ECF No. 28), and a motion to withdraw one of his claims (ECF No. 36).[2]  Defendants, for their part, filed a motion to dismiss (ECF No. 25) and a motion to stay discovery (ECF No. 26).  On July 31, 2020, I held a hearing on these motions by Zoom videoconference technology, which Plaintiff failed to attend,[3] and took the motion to dismiss (ECF No. 25), and third motion

---

[2] Plaintiff also filed a motion to disqualify the Undersigned (ECF No. 50), which Judge Drain denied on December 15, 2020.  (ECF No. 59.)

[3] Plaintiff sought adjournment the day before, *because his car was not safe to drive* from Keego Harbor to Detroit (ECF No. 41, PageID.452; *see also* ECF No. 50, PageID.513), although this was irrelevant, as the hearing notice plainly indicated that the hearing would be held remotely (ECF Nos. 34, 43).  After the event, he provided a new reason for not attending, albeit in his Motion for Recusal, namely a

for sanctions (ECF No. 39) under advisement.  Each will be addressed below in this report and recommendation.

### 2.    Instant Motion

Defendants filed an answer to Plaintiff's amended complaint on April 1, 2020 (ECF No. 19), but subsequently filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on May 26, 2020, asserting that McDonald is entitled to qualified immunity from Plaintiff's Fourth Amendment and equal protection claims, and that Plaintiff failed to plead cognizable due process and municipal liability claims (ECF No. 25, PageID.211, 217, 224-238).

Despite the Court's order that Plaintiff respond to Defendants' motion to dismiss by June 29, 2020 (ECF No. 27), Plaintiff failed to file a response, instead filing a motion for sanctions pursuant to 18 U.S.C. § 1001 against Defendants' counsel Marcelyn A. Stepanski on July 16, 2020, in which he cursorily addresses the merits of Defendants' motion to dismiss and argues that Ms. Stepanski should be sanctioned for false statements made therein (ECF No. 39).  Defendants filed their response in opposition to that motion on July 30, 2020.  (ECF No. 42.)  I will address each of these motions in turn.

### B.    Standard

---

"full-blown cold/flu which made me feel tired, so I slept."  (ECF No. 50, PageID.514.)

6

### 1.     Motion to Dismiss

Defendants move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 25, PageID.223-224.)  However, because they filed the motion after answering Plaintiff's amended complaint (*see* ECF No. 19), the appropriate rule under which to bring their motion is Fed. R. Civ. P. 12(c).  *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 12(c) ("After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.").

Nevertheless, motions to dismiss under Fed. R. Civ. P. 12(b)(6) and (c) are reviewed under the same standard.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).  "In fact, any distinction between them is merely semantic because the same standard applies to motions made under either subsection."  2 *Moore's Federal Practice*, § 12.38 *(*citing*, inter alia, Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 558 (6th Cir. 2017), and *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008)).  For this reason, "a motion to dismiss filed after the pleadings close will be treated as a motion for judgment on the pleadings." *Id. (*citing multiple circuit court decisions).  When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff and accept all

allegations as true." *Keys v. Humana*, Inc., 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented, nor may courts construct the plaintiff's legal arguments

for him.  Neither may the Court 'conjure up unpled allegations.'" *Rogers v. Detroit Police Dep't*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., *adopting report and recommendation* of Binder, M.J.) (internal citations omitted).[4]

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or (c), a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  However, "[t]he federal rules require that if, in a 12(b)(6) [and, thus, 12(c)] motion to dismiss 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" *Wysocki v. Int'l Business Machine Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) (quoting Fed. R. Civ. P. 12(d)).

Defendants attached several items to their motion to dismiss, including photographs of Plaintiff's property, correspondence regarding his violations, and the ordinance citations.  (ECF Nos. 25-2 – 25-8.)  As the correspondence and

---

[4] *See also*, *Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

citations are referenced in Plaintiff's amended complaint and central to his claims, the Court may consider them to make its determination regarding dismissal. Further, the Court need not decide whether consideration of the photographs would convert the motion into one for summary judgment because, as will be explained more fully below, it can address Plaintiff's claims and Defendants' arguments for dismissal of those claims without examining the photographs.

### 2.   Plaintiff's Motion for Sanctions

Plaintiff bases his motion for sanctions on 18 U.S.C. § 1001 alone (ECF No. 39, PageID.433), which states, in pertinent part:

> **(a)** Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully --
>
> > **(1)** falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> >
> > **(2)** makes any materially false, fictitious, or fraudulent statement or representation; or
> >
> > **(3)** makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both.  If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

**(b)** Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

Plaintiff sets this off in contrast to his Rule 11 motion, which was then pending and has since been decided in Defendants' favor. (ECF No. 39, PageID.433, ¶ 47; ECF Nos. 29, 49, 53.)

### C.   Discussion

#### 1.   Defendant's motion to dismiss is unopposed

Defendants filed their motion to dismiss on May 26, 2020.  (ECF No. 25.) "A respondent opposing a motion must file a response, including a brief and supporting documents then available."  E.D. Mich. Local Rule 7.1(c)(1).  "A response to a dispositive motion must be filed within 21 days after service of the motion."  E.D. Mich. LR 7.1(e)(1)(B).  Therefore, Plaintiff's response would ordinarily have been due on or about June 16, 2020.

On May 28, 2020, I entered an order which required Plaintiff to file a response on or before June 29, 2020.  (ECF No. 27.)  Although Plaintiff's motion for sanctions is based, in part, on his assertions that Defendants' counsel made false statements in the motion to dismiss, he only very cursorily addresses the merits of Defendants' arguments.  And it was filed on July 16, 2020, well after the response deadline set by the Court.

As no direct response, to date, has been filed, Defendants' motion to dismiss is unopposed. Nonetheless, the Sixth Circuit has held that a district court cannot grant a motion to dismiss for failure to state a claim on the sole ground that a plaintiff has failed to respond pursuant to a local rule. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Instead, district courts must, at a minimum, examine the motion to dismiss to ensure the movant has discharged its burden. *Id*. I will do so below.

    **2.**    **The Court should conclude that Plaintiff failed to state Fourth or Fourteenth Amendment claims, and dismiss his amended complaint**

    **a.**    **Fourteenth Amendment equal protection**

In Count I of Plaintiff's amended complaint, he claims that Defendants violated his Fourteenth Amendment equal protection rights by selectively enforcing the ordinance code—issuing him ordinance citations but issuing no citations to neighbors with worse property conditions. (ECF No. 17, PageID.95-98, 103-105, ¶¶ 119-131, 165-170.)

The doctrine of selective enforcement involves the discriminatory enforcement of an otherwise valid law. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). "Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect." *Id*.

To the extent Plaintiff alleges that he was treated differently based upon his accent or national origin (*see* ECF No. 17, PageID.66-67, 70-71, 73, 90, 96, ¶¶ 6, 28, 38, 102, 120), the Court should conclude that Plaintiff has failed to state a claim for relief under the Fourteenth Amendment equal protection clause.  To establish selective enforcement where a plaintiff alleges differing treatment based upon membership in a suspect class:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations.  Second, [the official] must initiate the prosecution with a discriminatory purpose.  Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Id*. at 319 (quoting *U.S. v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)).  Plaintiff alleges in his complaint that McDonald noticed his accent, and that he told McDonald of his national origin; that in a different conversation McDonald mocked his accent; and that he was treated differently than neighbors whose property was in worse condition.  (ECF No. 17, PageID.66-67, 70-71, 73, 90, 96, ¶¶ 6, 28, 38, 102, 120.)  However, acknowledging that if, taken as true, McDonald's behavior was repugnant, the Court should nevertheless conclude that Plaintiff has not stated a selective enforcement equal protection claim.  He has not alleged that his neighbors belong to a different group than him, or that Defendants'

selective enforcement of the subject ordinances has a discriminatory effect on the group to which Plaintiff belongs.

Moreover, to the extent Plaintiff alleges selective enforcement not on the basis of his national origin,[5] but because appeared to be an easy target with money (ECF No. 17, PageID.90, 96, ¶¶ 102, 120), the Court should also conclude that Plaintiff has failed to state an equal protection claim.  The Supreme Court has recognized an equal protection claim brought by a "class of one" "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the

---

[5] *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("We granted certiorari to determine whether the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group."). *See also Conrad v. City of Berea*, 243 F.Supp.3d 896, 902 n.45 (N.D. Ohio 2017) ("Plaintiffs also argue that they have been singled out as a 'class of one' due to their Cherokee heritage.  ****  The Court finds a 'class of one' theory ill-fitting here.  'When a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called class of one theory and must prove that the government's actions lacked any rational basis.'  Plaintiffs argue that their Cherokee heritage—which implicates a fundamental right—is the impetus for selective enforcement.  ****  Therefore, a class of one theory does not apply here.  And, even if it did, Plaintiffs would be less likely to succeed on that claim as a rational basis standard is more favorable to Defendants.") (citations omitted).

government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005) (citation omitted).  But here, there is no doubt that Defendants had a rational basis for enforcing the ordinances against Plaintiff, as he admits in his amended complaint that he had several vehicles in his driveway, that the boat was not currently operational, and that did not know where the title to his van  was and that its seats had been removed (ECF No. 17, PageID.70-73, ¶¶ 23, 32, 35), all of which undermine his allegation that he was simply an easy target for Defendants to make money (ECF No. 17, PageID.90, 96, ¶¶ 102, 120).[6]  To survive a motion to dismiss, a complaint must state a claim for relief that is plausible on its face, *Iqbal*, 556 U.S. at 678, and "[t]he plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct," *16630 Southfield Ltd. P'Ship*, 727 F.3d at 504.  Utilizing these considerations, the Court should conclude that Plaintiff has failed to state an equal protection claim and dismiss Count I against both Defendants.[7]

---

[6] In a May 2019 e-mail to McDonald, attached as Exhibit 4 to Defendants' motion to dismiss, Plaintiff also admitted that the front tires of his Hummer leak slowly, and that he would need to take it to the tire shop.  (ECF No. 25-5.)

[7] Should the Court agree with the analysis and conclusions herein, it need not address Defendants' qualified immunity or municipal liability arguments.  (ECF No. 25, PageID.224-234

15

**b.      Fourteenth Amendment Due Process – access to court**

In Count II of his amended complaint, Plaintiff claims that Defendants denied him access to the 48th district court in violation of his Fourteenth Amendment due process rights.  (ECF No. 17, PageID.105, ¶ 173.)  Specifically, Plaintiff alleges that: (1) the City targeted him as part of a policy to make money from ordinance violations and, in so doing, (2) sent him a computer-generated summons, which cannot be considered a court order, to appear in court for his ordinance citations in violation of his right to be free from self-incrimination, and (3) denied him the opportunity to file a motion to dismiss those citations.  (ECF No. 17, PageID.76-80, 84, 90-95, 105, ¶¶ 52, 57, 61-62, 69, 83, 102-104, 114-117, 173.)  For the reasons set forth below, the Court should dismiss this claim against both Defendants.

"The Supreme Court has recognized a constitutional right of access to the courts, whereby a plaintiff with a nonfrivolous legal claim has a right to bring that claim to a court of law." *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013).  In other words, denial of access occurs where a plaintiff is deprived of the ability to bring an underlying claim. *Id*. (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

Here, Plaintiff claims not that he was denied the ability to bring a claim in court, but that he was denied certain procedural processes, like the opportunity to file a motion.  Accordingly, his Fourteenth Amendment access to court claim is best characterized as a traditional procedural due process claim, notwithstanding Plaintiff's characterization as one for substantive due process. (ECF No. 17, PageID.105, ¶ 173.)

"The Fourteenth Amendment of the United States Constitution protects individuals from the deprivation 'of life, liberty, or property, without due process of law.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting U.S. Const., amend. XIV, § 1)).  "Procedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property[.]" *Id*. (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).  "To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that '(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'"  *Id*. (quoting *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).  "Generally, procedural due process requires a state actor to 'provide a person with notice and an opportunity to be heard before depriving that person of a property or

liberty interest.'" *Dubuc v. Green Oak Twp.*, 642 F.Supp.2d 694, 703 (E.D. Mich. 2009) (quoting *Warren*, 411 F.3d at 708 (6th Cir. 2005)).

It is clear, both from Plaintiff's allegations, as well as the correspondence and ordinance citations attached to Defendants' motion to dismiss and referred to in Plaintiff's amended complaint, that he received more than adequate notice and an opportunity to be heard. Plaintiff received multiple written notices and phone calls regarding the ordinance violations asserted against him, as well as extensions to correct those violations, as Plaintiff acknowledges. (ECF No. 17, PageID.70-75, ¶¶ 23-47; ECF Nos. 25-3 – 25-7.) He also received written ordinance citations, outlining the alleged violations, as well as two court dates to allow for a response. (ECF No. 17, PageID.73-80, ¶¶ 36-39.) And simply being told that he must speak to the City Attorney before filing a motion in the district court, assuming the truth of Plaintiff's allegation to that effect (ECF No. 17, PageID.76, ¶ 52), does not negate the adequate procedural due process he was afforded. In fact, our own Court requires that before a motion can be filed, concurrence must be sought from the opponent, after explaining the basis of the requested relief. E.D. Mich. Local Rules 7.1 and 37.1.

Moreover, to the extent Plaintiff bases Count II of his amended complaint on his Fifth Amendment right to be free from self-incrimination, that claim should be dismissed. "A blanket assertion of the privilege by a witness is not sufficient to

18

meet the reasonable cause requirement and the privilege cannot be claimed in

advance of the questions.  The privilege must be asserted by a witness with respect

to particular questions, and in each instance, the court must determine the propriety

of the refusal to testify." *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1987).  A

simple summons for a court hearing,[8] then, does not violate the Fifth Amendment.[9]

Likewise, grounding his claim in other constitutional provisions, such as the First

Amendment right "to petition the Government for a redress of grievances[,]" does

not cure these shortcomings,[10] to say nothing of the fact that the state court case

---

[8] Plaintiff takes issue with the fact that the summons was "a piece of paper
generated by computer" (ECF No. 17, PageID.94, ¶ 114), but cites to no law in
support of his assertion that such a summons cannot be considered a court order.
Nor does any such law exist.

[9] I note that Plaintiff previously filed a motion to withdraw his Fourteenth
Amendment due process claim at Count II of his amended complaint without
prejudice (ECF No. 36), which the Court denied because of the prejudicial effect
withdrawal would have had on Defendants (ECF No. 45).  Considering his attempt
to voluntarily dismiss this claim, coupled with his failure to respond to this motion,
he is unquestionably willing to see this claim dismissed.  The only real question is
whether it should be dismissed with or without prejudice.

[10] *Christopher*, 536 U.S. at 415 n.12 (2002) ("Decisions of this Court have
grounded the right of access to courts in the Article IV Privileges and Immunities
Clause, *Chambers* v. *Baltimore & Ohio R. Co.,* 207 U.S. 142, 148, 52 L. Ed. 143,
28 S. Ct. 34, 6 Ohio L. Rep. 498 (1907); *Blake* v. *McClung,* 172 U.S. 239, 249, 43
L. Ed. 432, 19 S. Ct. 165 (1898); *Slaughter-House Cases,* 83 U.S. 36, 16 Wall. 36,
79, 21 L. Ed. 394 (1873), the First Amendment Petition Clause, *Bill Johnson's
Restaurants, Inc.* v. *NLRB,* 461 U.S. 731, 741, 76 L. Ed. 2d 277, 103 S. Ct. 2161
(1983); *California Motor Transport Co.* v. *Trucking Unlimited,* 404 U.S. 508, 513,
30 L. Ed. 2d 642, 92 S. Ct. 609 (1972), the Fifth Amendment Due Process
Clause, *Murray* v. *Giarratano,* 492 U.S. 1, 11, 106 L. Ed. 2d 1, 109 S. Ct. 2765, n.

against him was dismissed or that his complaint does not make clear under Rule 8 exactly how the City, rather than the 48th district court itself, could deny him the ability to file a motion. Accordingly, even viewing the allegations under Count II in the light most favorable to Plaintiff, the Court should conclude that he fails to state a Fourteenth Amendment procedural due process claim.

### c. Fourth Amendment

In Count III of Plaintiff's amended complaint, he claims a violation of his Fourth Amendment right to be free from an unlawful search, alleging that in order to know whether his vehicles were properly licensed, McDonald would have had to enter the curtilage area of his home and remove the tarps he used to cover the license plates. (ECF No. 17, PageID.67, 70-73, 91-94, 107, ¶¶ 7, 23, 25, 31-37, 106-110, 179.) In so doing, he relies upon the Supreme Court's decision in *Collins v. Virginia*, --- U.S. ---; 138 S.Ct. 1663 (2018). (ECF No. 17, PageID.93-94, ¶¶ 110-112.)

---

6 (1989) (plurality opinion); *Walters* v. *National Assn. of Radiation Survivors,* 473 U.S. 305, 335, 87 L. Ed. 2d 220, 105 S. Ct. 3180 (1985); and the Fourteenth Amendment Equal Protection, *Pennsylvania* v. *Finley,* 481 U.S. 551, 557, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), and Due Process Clauses, *Wolff* v. *McDonnell,* 418 U.S. 539, 576, 41 L. Ed. 2d 935, 94 S. Ct. 2963, 71 Ohio Op. 2d 336 (1974); *Boddie* v. *Connecticut,* 401 U.S. 371, 380-381, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971).)

"The Fourth Amendment provides in relevant part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Collins*, 138 S.Ct. at 1669.  "To give full practical effect to that right, the Court considers curtilage— 'the area immediately surrounding and associated with the home'—to be 'part of the home itself for Fourth Amendment purposes.'" *Id*. at 1670 (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)) (quotation marks and citation omitted).  Courts look to four factors to evaluate whether the area surrounding a home constitutes curtilage:

> (1) "the proximity of the area claimed to be curtilage to the home"; (2) "whether the area is included within an enclosure surrounding the home"; (3) "the nature of the uses to which the area is put"; and (4) "the steps taken by the resident to protect the area from observation by people passing by."

*U.S. v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (quoting *U.S. v. Dunn*, 480 U.S. 294, 301 (1987)).

Defendants argue, citing *Galaviz* and *U.S. v. Estes*, 343 F. App'x 97 (6th Cir. 2009), that no Fourth Amendment violation occurred because Plaintiff's driveway cannot be considered curtilage, referring to photographs of Plaintiff's property purportedly taken by Google Images in 2018.  (ECF No. 25, PageID.222-231; ECF Nos. 25-2, 25-7.)  In so doing, they assert that the photograph they attached as Exhibit 1 was referenced in Plaintiff's complaint (ECF No. 25,

21

PageID.218), which Plaintiff seems to dispute in his motion for sanctions (ECF

No. 39, PageID.425-426).[11]   Regardless, the Court need not view the photographs

to make a determination regarding Plaintiff's Fourth Amendment claim.   From the

description of the property Plaintiff includes in his amended complaint alone, the

Court should conclude that Plaintiff's driveway and the surrounding area were not

within the curtilage of the house and, thus, dismiss Plaintiff's Fourth Amendment

claim.

In *Collins*, the Supreme Court found a Fourth Amendment violation where

an officer removed a cover to investigate a motorcycle parked in a driveway on the

basis that the area the officer entered should be considered part of the curtilage of

the home.   *Collins*, 138 S.Ct. at 1670-71.   Looking to his amended complaint as

well as the arguments raised in his motion for sanctions, Plaintiff appears to liken

his own property to that at issue in *Collins* largely on the basis of his allegations

that he covered his van and Hummer license plates with a tarp.   (ECF No. 17,

PageID.71-71, 89, 93-94, 107, ¶¶ 32, 98, 110-111, 179.)   However, in making its

determination in *Collins*, the Court relied less on the fact that the motorcycle at

issue was covered, and more on other aspects of the driveway and property at

issue, including its partial enclosure, stating:

---

[11] I note that at Paragraph 123 of Plaintiff's amended complaint, he states, "area picture of my house that shows, the hummer boat and van parking in my drive way (curtilage area of my house)[.]"  (ECF No. 17, PageID.96, ¶ 123.)

According to photographs in the record, the driveway runs alongside the front lawn and up a few yards past the front perimeter of the house. The top portion of the driveway that sits behind the front perimeter of the house is enclosed on two sides by a brick wall about the height of a car and on a third side by the house. A side door provides direct access between this partially enclosed section of the driveway and the house. A visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure and instead proceed up a set of steps leading to the front porch. When Officer Rhodes searched the motorcycle, it was parked inside this partially enclosed top portion of the driveway that abuts the house.

*Id*.

In contrast, Plaintiff describes his driveway and the strip of land beside it, which he defines as the curtilage of the home, to be unfenced and otherwise open, alleging at Paragraph 32 of his amended complaint:

There is a fence surrounding my house *except the driveway and curtilage area*. The curtilage area is a narrow long strip of land located on the right side of my house between the house and driveway (about 3ft or so wide). There is a shed at the far end of my driveway, the van facing the shed, there is a boat right behind the van (I have a small 25 years old boat that I forgot to mention before, the lower unit got damaged, it wouldn't start, I couldn't sell it, I will try to start it again, if I couden't [sic], I will probably give it to a friend). The hummer parks right behind the boat facing the street. The 2 cars and the boat parked in my driveway (bumpers to bumpers) along side of the house in the curtilage area. Only access to the curtilage area is the front of the house, there is a strip of Concrete slabs separating the curtilage area from front yard. If a person entered the curtilage area of my house, it is impossible he or she did it by mistake regardless of the circumstances. No one could see the license plates of the Hummer or van from the front yard, except if he or she entered the curtilage area of my house and physically remove the tarp that cover the license plates. I use a large tarp that cover the boat and both cars license plates, I tucked it under the back pop-up window of the van and under

23

the hummer backdoor.  My house has a large window on the driveway.  Located toward the far end of my house.  the back of both van and boat are in the front of this window.  Defendant was looking inside my house through the same window.

(ECF No. 17, PageID.71-72 (emphasis added).)

From this description alone, the Court should conclude that three of the relevant factors described above undermine Plaintiff's argument that his driveway and the surrounding area constitute curtilage; and, regardless of how many times the word *curtilage* is used in the pleadings, its legal definition is derived from context, not repetition.  *See* Black's Law Dictionary (11th ed.)  (Curtilage: "The land or yard adjoining a house, usu[ally] *within an enclosure*.") (Emphasis added).  Although the driveway and adjacent strip of land are in close proximity to the home, each was unenclosed and open to view, easily accessible from the front of the home, and used to park multiple vehicles.  Further, it cannot be said that Plaintiff took action to conceal the *area* from observation by covering the vehicle license plates with a tarp, as people passing by would still have been able to see the driveway, the adjacent land, and all four vehicles.  *See Galaviz*, 645 F.3d at 355-56 (finding that the driveway was not within the protected curtilage of the house because, though it was directly adjacent to the house, it was unenclosed by a fence or other barrier, the portion on which the subject car was parked directly abutted the public sidewalk, and "no apparent steps were taken by the residents of the house to protect the driveway from observation by passersby—no hedges or bushes

24

obstructed the view of the driveway from the sidewalk or street, for example"); *see also Estes*, 343 F. App'x at 101 ("When we consider the photographs of defendant's house and its adjacent driveway, which is next to an alley, at least three of the factors mentioned in *Dunn* undercut a finding that the driveway represents curtilage: first, the area was not enclosed; second, defendant had not taken any steps 'to protect the area from observation by people passing by'; third, it was used as a point of entry into the residence, accessible from the adjacent alley.").  Accordingly, even viewing the allegation that McDonald entered the driveway and surrounding area and lifted a tarp to look at the license plates of Plaintiff's vehicles in the light most favorable to Plaintiff, the Court should find that the area was not within the protected curtilage of the home for purposes of entitlement to Fourth Amendment protection.  Indeed, doing so would be an endorsement of efforts to evade ordinance citations by simply throwing a cover over blight that is otherwise visible to the neighborhood.

### d.    Fourteenth Amendment due process - vague

At Count IV of his amended complaint, Plaintiff claims that the ordinance citations themselves were vague, and Defendants denied his attempts at clarification (ECF No. 17, PageID.109, ¶ 186).  More specifically, he alleges that:

> The city of Keego Harbor (Defendant) adopted an ordinance 302.8, which indicated that inoperable Vehicle is not allow[ed] to park in the driveway for more than 7 days, but the same Vehicle can be stored or

> parked in a garage.  Supreme court in 2017 found no different
> between a Vehicle in curtilage area or in the garage, both of them has
> the same protection under the law.  It is also Unconstitutional
> Vagueness.  Defendant adopted this ordinance, which it serve[s] no
> purpose other than promoting selective enforcement and
> discrimination, this is exactly what happened here in this case.

(ECF No. 17, PageID.108-109, ¶ 185.)  In other words, it would appear that the

basis of his attack is his belief that cars parked in a garage are indistinguishable

from cars parked in the driveway, as he points to no particular language on the face

of the ordinance as being unduly vague.  In any case, the Court should have no

trouble appreciating the difference between a car parked in public view on a

driveway and a car hidden in a garage in terms of an ordinance violation for blight.

*See Jobe v. City of Catlettsburg*, 409 F.3d 261, 268 (6th Cir. 2005) (reasoning that

an ordinance prohibiting the placement of leaflets on vehicles furthered the

government's interest in preventing litter and esthetically unpleasant visual blight).

Similarly, Defendants' argument for dismissal of this claim is also cursory

and incomplete, as they assert in a single paragraph that Plaintiff misinterprets

*Collins* and conflates the concepts of curtilage and impermissible storage of

vehicles, with little elucidation.  (ECF No. 25, PageID.236-237.)  Nevertheless, for

the reasons that follow, the Court should dismiss Count IV against both

Defendants.

"The Due Process Clauses of the Fifth and Fourteenth Amendments provide the constitutional foundation for the void-for-vagueness doctrine." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999).

> A vague ordinance violates the Constitution in two significant respects: such an ordinance fails, (1) to define the offense with sufficient definiteness that ordinary people can understand prohibited conduct, and (2) to establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner. *See Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The second prong—providing minimal guidelines to govern the conduct of law enforcement—constitutes the more important aspect of the vagueness doctrine. *See Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).  "This reflects the common sense understanding that the average citizen does not read, at his leisure, every federal, state, and local statute to which he is subject." [*Columbia v. Natural Resources, Inc. v.*] *Tatum,* 58 F.3d [1101,] 1105 [(6th Cir. 1995)].  An enactment imposing criminal sanctions or reaching a substantial amount of constitutionally protected conduct may withstand facial constitutional scrutiny only if it incorporates a high level of definiteness.  *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Kolender,* 461 U.S. at 357, 103 S.Ct. 1855.

*Belle Maer Harbor*, 170 F.3d at 556-57.

By Plaintiff's own admission in his amended complaint, he received notices outlining the ordinance violations alleged against him, and had numerous conversations with McDonald, both by telephone and in person, regarding those violations.  (ECF No. 17, PageID.70-73, ¶¶ 24-38; ECF Nos. 25-3 – 25-7.)  And the citation itself lists the ordinances of which Plaintiff was allegedly in violation, with a short explanation for each.  (ECF No. 25-7.)  Additionally, Plaintiff would

27

have had every opportunity for further clarification if he had attended his court hearing originally scheduled in October, rescheduled to November, and ultimately dismissed without prejudice because of Plaintiff's filing of this action.  Thus, though the ordinance citation may not have been perfectly clear by Plaintiff's standards, the Court should conclude that the alleged confusion does not arise to the level of unconstitutional vagueness.  The more appropriate venue for clarifying any confusion would have been at the local level, and not in federal court.

Additionally, in his amended complaint, Plaintiff alleges only that the ordinance itself – IPMC 302.8 – is unconstitutionally vague because the "Supreme Court in 2017 found" that there is no difference "between a Vehicle in curtilage area or in the garage, both of them has the same protection under the law." (ECF No. 17, PageID.108, ¶ 185.)  From context, I assume that this is a reference to *Collins*, though it was decided in 2018.  However, as provided above, the Court should conclude that Plaintiff's driveway and adjacent land cannot be considered curtilage for purposes of the Fourth Amendment, even under *Collins*, as explained above.  And Plaintiff has failed to put the language of the ordinance itself at issue. Thus, the Court need not conduct further analysis regarding Plaintiff's allegation that the ordinance is unconstitutionally vague.

### 3.      The Court should deny Plaintiff's motion for sanctions

28

As provided above, Plaintiff bases his motion for sanctions only upon 18 U.S.C. § 1001, which explicitly "does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." 18 U.S.C. § 1001(b). Thus, on that reasoning alone, the Court should deny his motion. Additionally, especially if the Court agrees with the above analysis regarding Defendants' motion to dismiss, it should conclude that the arguments made therein do not establish entitlement to sanctions. Plaintiff asserts, for example, that Defendants filed their motion to dismiss on the same grounds filed twice before (ECF No. 39, PageID.420-421), but the docket reveals that Defendants have filed only the instant motion to dismiss, and Defendants may file both an answer to Plaintiff's complaint and a motion to dismiss (or for judgment on the pleadings), as they did here. Further, even if it was somehow poor form for Ms. Stepanski to e-mail Plaintiff seeking concurrence regarding the motion to dismiss before she had filed an appearance in the case (ECF No. 39, PageID.423-425) – and the Undersigned cannot see how it would have been so – it does not amount to sanctionable conduct, and did not relieve Plaintiff of his obligation to respond to the motion to dismiss. Moreover, Plaintiff's disagreements with the factual representations made by Defendants in their motion to dismiss should have been appropriately addressed in a response to that motion, as opposed to a separate

29

motion for sanctions, and fail to establish sanctionable fraud or bad faith.  And, finally, the statute under which Plaintiff moves for sanctions is clearly a criminal statute – which Plaintiff himself acknowledges (ECF No. 39, PageID.433) – not subject to private prosecution and not providing for a civil or procedural remedy. *See Federal Sav. & Loan Ins. Corp. v. Reeves,* 816 F.2d 130, 137-139 (4th Cir. 1987); *Flessner v. Michigan*, No. 19-cv-1035, 2020 WL 746843, at *3 (W.D. Mich. Feb. 14, 2020) (citing *Shoemake v. Mansfield City Sch. Dist. Bd. of Educ.*, 61 F.Supp.3d 704, 711 (N.D. Ohio 2014)).

### D.    Conclusion

The Court should **GRANT** Defendants' motion to dismiss (ECF No. 25), which would result in the dismissal of Plaintiff's entire amended complaint, and **DENY** Plaintiff's motion for sanctions (ECF No. 39).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

30

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 3, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE